**Stella EADDY**
v.
**The UNITED STATES.**
No. 563–52.

United States Court of Claims.
March 6, 1956.

———◆———

Harry Brokaw, East Liverpool, for plaintiff.

Victor A. Altman, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff sues to recover damages for injuries done to her property and for other losses suffered by her in connection with a lease of some of her land to the Government.

Early in 1943 the Army's Corps of Engineers selected a site in Sumter County, Florida, for an airfield. Lands were leased from several owners, including plaintiff, and the airfield was constructed during the summer of 1943.

The officer who negotiated with plaintiff obtained from her a signed entry permit in April 1943, covering 105 of her 250 acres. The formal lease was executed six months later, in October, and was for a term beginning April 8, 1943.

■ The Army took possession on or about May 1, 1943, and retained the property until November 12, 1946, when the lease was terminated and the 105 acres were returned to plaintiff. The petition in this case was filed on November 10, 1952, just two days short of six years after the termination of the lease. As a consequence of the late filing, those of plaintiff's claims not cognizable under the lease are barred by the statute of limitations.

The lease provided for an annual rental payment for the 105 acres, and for additional payments for removing from the leased land and relocating fences, sheds, and some overhead irrigation pipe, and for the destruction of a well. It specified that "in consideration of the agreed payment * * * the Lessor hereby releases the Government from liability for all damages to * * * [the well, sheds, fences, and irrigation system] * * * and in addition, releases the Government from liability for reasonable damage to the land." There was also this provision: "No damages for destruction of timber is waived herein."

The specified payments were duly made by defendant and accepted by plaintiff.

The Government reserved the right, in the lease, "to make alterations, attach fixtures, and erect additions, structures, or signs, in or upon the premises * * *, which fixtures, additions, or structures * * * shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government." The lease contained no provision relating to restoration of the premises by the lessee.

■ It seems clear, at the outset, that three of plaintiff's claims must be eliminated. They cannot be said to be predicated upon the terms of the lease, express or implied; and none of the three arose within six years of the filing of the action.

The fence on which brush was piled while workmen were clearing a lane for telephone lines was on that portion of plaintiff's land not included in the lease. The damage was done in 1943. The irrigation pipe which an officer and his men carried away was taken from unleased lands. The pipe was taken in 1943. The hogs which found their way to barbecue pits in the airfield escaped from fenced areas in the unleased land. The last of them disappeared in 1944. Whatever validity or lack of it these claims may have had in this court if asserted in time, they were not timely filed, and they therefore are barred by the statute of limitations.

Shortly after the Army took possession of the premises leased from plaintiff work was begun on clearing the land for

runways and appurtenant taxiways and parking spurs. Among the trees felled were several pines, some large enough for sawtimber and some of pulp size. Use was made of the felled trees accordingly. Some were sawed into lumber and some into pulp logs.

■ Plaintiff claims the value of the timber in its processed form, on the ground that defendant was a wrongdoer or trespasser when it cut the trees. The lease stated that the premises were "to be used for the following purpose: Requirements of the War Department." It also contained a reservation, heretofore noted, that "no damages for destruction of timber is waived herein." Plaintiff does not contend that she did not know, from the start, that the Army wanted the land for an airfield and that in making the area usable for that purpose some woodland would have to be cleared. The evidence as a whole invited the inference that the reservation pertaining to timber was inserted for the express purpose of postponing until a later date evaluation of the timber to be cut. We do not think the facts of this case justify the application of plaintiff's theory of damages.

■ In every lease, however, there is an implied obligation on the part of the lessee to " '* * * treat the premises demised in such manner that no injury be done to the inheritance * * *' ". United States v. Bostwick, 94 U.S. 53, 66, 24 L.Ed. 65. Defendant concedes liability for diminution in the value of plaintiff's land resulting from the cutting of the timber and we think that is the proper measure of damages.

■ Our finding places the stumpage value of the timber at $300. Plaintiff excepts to the use of stumpage value as the criterion, and further contends that, if stumpage value is to be used, our determination of the quantity cut is inadequate. We adhere to the stumpage value determination as being reasonable, in view of the evidence as a whole.

When defendant returned to plaintiff the 105 acres involved in this lease, the market value of the tract was $500 less than it would have been if defendant had not cut timber to make room for runways and had not constructed the runways. This amount also includes $68 diminution for the action of defendant in leaving the treetops on the ground, as is indicated by the trial commissioner's findings which we have adopted. As we have said, $300 of the $500 represents the stumpage value of the felled timber.

Defendant does not question the $300 valuation, but objects to the inclusion of $68 additional in the overall estimate of diminution. Defendant contends that the premises suffered no damage from the Army's action in leaving the treetops on the ground, and cites plaintiff's subsequent action, after the property was returned to her, in selling the standing timber that remained without requiring the contractor to remove the brush. The argument is unconvincing. If portions of the land had not been previously cluttered with brush from felled trees, plaintiff might not have made the later contract at all, or might have required different terms.

We think defendant's failure to remove the brush contributed to the diminution of the value of the land, and the $68 would not be an unreasonable allowance for that damage.

■ Plaintiff asks for the cost of removing the asphalt, gravel, and sand used in hard-surfacing the runways and spurs. The Army abandoned these installations, and plaintiff did not remove them. The cost of removing the pavement from the 3.3 acres of land covered by it would have greatly exceeded the value in fee of that portion of the land. Plaintiff seeks damages based on the cost of removing the pavement.

Defendant concedes liability for diminution in the value of plaintiff's land resulting from the presence of the pavements, on the same ground as for the timber claim. Here again we agree that the basis of liability and the measure of damages are correctly stated by defendant, and we have found the diminution

from this cause amounts to $132, being the total value of 3.3 acres at $40 per acre.

All items together amount to a diminution of value in the sum of $500. Plaintiff is entitled to recover this amount.

Defendant vigorously contests plaintiff's right to recover the value of the unharvested peppers, challenging the claim on the facts as well as the law. We have sustained the trial commissioner's findings of the facts. The peppers were growing in land within the area the Army wanted when the officer negotiated with plaintiff for the entry permit. The officer assured plaintiff that she would be permitted to complete the harvest, which would have been done during the month of May if plaintiff had not been denied permission to enter the premises after the Army took possession.

As for the condition survey which plaintiff signed in October and which recited that the peppers had been harvested, we do not recognize a problem of the magnitude defendant suggests in the conflict of testimony. In our view the occurrence was not such as necessarily to imply that one or the other, plaintiff or the representative of defendant, failed to tell the truth when on the witness stand and under oath.

There was essentially no disagreement between plaintiff and defendant's administrative employee about the crops. Their discussion took place in October. The crops had been planted in April or earlier, before the Army took possession. By October plaintiff had long ago reconciled herself to the abandonment of the corn, beans, cucumbers, squash and tomatoes she had planted in the spring. Whether harvested or abandoned, those crops were no longer in issue when the condition survey was discussed. Apparently neither plaintiff nor defendant's employee singled out the pepper crop for particular discussion. The employee of defendant understood that there was no issue concerning plaintiff's crops. He typed up the document as showing they had all been harvested, the peppers included. Plaintiff intending acquiescence in the conclusion that there was no issue, but without realizing that she was prejudicing her claim for the peppers, signed the condition survey as it was presented to her.

█ But even if we thus explain plaintiff's acquiescence in the condition survey, we cannot legally allow a recovery on the claim which plaintiff thought she had retained. If the Army's promise to allow plaintiff to harvest her peppers is regarded as an independent contract between the parties, separate and apart from the lease, it was breached when the Government refused to allow her to enter. The statute of limitations bars any recovery on such a cause of action.

On the other hand, if we consider the promise to allow plaintiff to harvest the peppers as part of the lease agreement we cannot consider it because it was not included in the written memorial purporting to state the terms of the lease. To import such a promise into the lease would implicitly contradict the condition survey which was a part of the lease. It would give rise to an additional claim under the lease, the document (as set forth in paragraph 4 thereof) which settles several claims, exempts one other, but does not exempt the pepper claim. It would reform an instrument for what, at most, was a unilateral mistake as to its meaning. We do not think plaintiff is entitled to recover on the pepper claim.

For the diminution in value of the leased premises resulting from the cutting of timber and the paving installations, plaintiff is entitled to recover $500. Judgment will be entered accordingly.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.